I'm Stephen Yagman. Good morning, Judge Pius, Judge Berzon, and Judge Kristen. I only have several points to make. All of them are in the briefs, but I want to put them a little more colloquially in oral argument. First, and most important, I think, is that there's a presumptive birth domicile, and it hasn't been rebutted in this case at all. And the burden of proof on the rebuttal of that presumption clearly was on the defendant, and it wasn't met. What is the presumption? The presumption is I'm a New Yorker. Why is that a presumption? That's what I'm trying to find out. I'm sorry? I'm trying to find out why that's a presumption. Because the cases that interpret domicile in which citizenship is based, as set forth in the briefs, set forth a presumptive domicile birth. Because you were born in New York. Well, yes, and... It's not a trick question. We're just trying to understand. Yeah. I was born in Brooklyn, and I remained a New Yorker my entire life. I am now... You have a New York state of mind. Exactly. I got that part from the brief. Exactly, and I had even included in that state of mind until about two weeks ago that I thought I had gone to Lincoln High School with Neil Sedaka, and then I realized he was three years ahead of me, and I just used to see him wandering around... You thought you'd gone to high school with whom? Neil Sedaka. Neil Sedaka. Oh, okay. You know, breaking up is hard to do, and Carol, for his hit songs. I've always been a New Yorker, and I don't think that the district court gave sufficient credence or even bothered to pay any attention to that presumption. In fact, for me, and I think some judges on this court who know me, know that the worst thing to call me would be a Californian, a Southern Californian. I'm just not one of those. I've maintained all the indicia. Now, where's your office? Pardon me? Where's your office? I no longer have an office. I've been disbarred. Right, but I thought you were working. I don't get a salary. I work because I have nothing better to do, and I help out my old law firm. My residence is in... Didn't you apply for attorney's fees, or didn't the firm... Sorry, I can't hear you. Didn't the firm apply for fees as a paralegal for some work you did recently? Yeah, I think as I pointed out in one of the briefs, fees, unfortunately, belong to the client, and that's where the fees go. There's a case called Mitchell v. Venegas at the United States Supreme Court. There's a very horrible case in this circuit that Judge Bybee wrote called Pony v. County of Los Angeles, in which Mike Mitchell, a recently deceased civil rights attorney, tried to get this court to hold that fees belonged to the attorney when there was an assignment of fees, and in Pony, this court held that that just wasn't so. But who it belongs to really isn't the point. The point is that you were doing compensable work in California. I did work that was compensated to the client. Right. There's no evidence in the record that I did the work in California. As everybody these days, work is done on computers. Do you have a residence in New York? I haven't had a residence in New York since May of 2009, but I own real property there, and I own no real property in California, nor have I since 1995. I had a residence in New York continuously from December 19, 1944, my birthday, until May of 2009. I don't have a residence there just now because I lost the residence, and I'm saving up, hoping to make some money and reestablish a residence there. I had a cooperative apartment in Lower Manhattan until 2009 from about 1978. A preponderance of the evidence shows that I'm a New Yorker, and I'm the domiciliary of New York. The district court placed way too much weight on residence and on things that are a function of residence, like voting, which is not a function of state citizenship but is a function of state residence. And last, as I think I point, as I know I pointed out in the brief, in a case called Hill- Where was your residence? I'm sorry. I'm sorry if you can't hear me. Where was your residence for the past 25 years, say? Residence. The past 25 years was both in California and in New York, but the New York residence terminated in May 2009. Meaning you had a place to live there, but where was your residence? I split my time between both places. I tried to spend as much time as I could in New York because I like New York, and I've never liked Los Angeles. Then why didn't you go back to New York? Because I can't afford an apartment there presently. If I could, I would.  Did you ever have a law office in New York? Yes. When was that? Until 1999. And I'm not a member of either the Bar of New York or the Bar of California. Last, as was stated in the case of- this court's case of Hilton v. Cards, as cited in the brief, this court, sitting in diversity, has to begin with the pronouncements of the state's highest court, which bind this court. Under California law, I'm a New Yorker, and coincidentally under New York law, I'm also a New Yorker. Unless there are any other questions, I'll sit down. I don't think so. Thank you. We'll hear from the other side. Good morning, Your Honors. Ed Farrell of Murchison & Cumming, appearing on behalf of Defendant and Appellee Paul Gabbard. Your Honors, a cursory examination and a thorough examination of the court's ruling on the diversity issue makes clear that the court looked at nine factors in coming to its conclusion that there was no diversity in this matter. Apologies to Billy Joel, but a New York state of mind does not equate to domicile. I'm sure you would find that most New Yorkers- It is an awfully fuzzy concept to be governing something as important as where you can bring a lawsuit. It is, Your Honor, and that's why there is a multiple of factors that the court takes a look at before coming to that conclusion. Residence is one of them. The courts have made it clear that residence is one of the most important factors in determining domicile for the purposes of jurisdiction. And the record in this court makes clear that at the time this lawsuit was filed in 2014, without a doubt, Mr. Yagmin's residence was in California. But that wasn't the only thing that the court looked at in making its determination that there was a lack of diversity here. The court looked at where Mr. Yagmin worked. Where was he working in 2014 when he filed this lawsuit? He was working in California. Now, Mr. Yagmin- His argument- Forgive me for interrupting. His argument is that he was present. I don't think he disputes that. Present, but didn't have an intent to remain. I understand that, Your Honor, but the intent to remain is not looked at by itself. Anyone can say, I don't have an intent to remain in California. I'm going back to Montana. I'm going back to Florida. I'm going back to Delaware. And that's my domicile for the purposes of diversity. That's why the court take a look at other factors in coming to that determination. And those factors all point to the fact that in 2014 when this lawsuit was filed, diversity did not exist. What's the strongest of the nine factors? What are the ones that cut most sharply in your favor? Residence? Residence. The fact that he worked in California. The fact that he has a California driver's license. The fact that he has- He also has a New York driver's license with a California address. I don't know how you do that. Residence of his spouse, perhaps. Pardon me, Your Honor? Residence of his spouse. California and Florida, but California, not New York. Personal property, California, not New York. So the court looked at all of those things in making its determination. Didn't Judge Morrow at one point recognize a New York domicile for Mr. Yagman? I'm sure that's true, Your Honor, but that wasn't in 2014. I think that was in 2005. And what's changed? The fact that Mr. Yagman is now living, working, owns property, owns a car, has a driver's license in California. That wasn't the same thing back in 2007? I don't know that, Your Honor. The record does not show that. Can I ask you a question? Sure, go ahead. Did the district court make a finding of fact here? Yes, I think a mixed finding of law and fact, and therefore... How do we review that? The review is a clearly erroneous standard, and under that standard, it's very deferential to the court's findings, those factual findings, and I don't think that there's clear error in this case, which would be the only grounds for this court to overturn that finding by the district court. I think this court... And the district judge made this factual determination, which I recognize is probably a mixed question, you're probably right, but with a heavy dose of facts behind it. Yes, Your Honor, I think so. But he did this all on affidavits or declarations. That's correct, Your Honor, and requests for judicial notice of pleadings and other declarations that were filed in other lawsuits, both in state and federal court. This wasn't done willy-nilly. The court took a look at all the factors and decided that those factors leaned most strongly to a finding... Let me ask you this. Mr. Yagman talked about a presumption, I guess, where he was born, but we do have Judge Morrow's finding back in 2006. Why doesn't he start out with the presumption from 2006 that his domicile was New York back then? Well, first of all, there's two reasons, Your Honor. First of all, we don't have anything in this record to show what Judge Morrow took a look at when she made that determination. Well, we have her determination. Her determination is a factual finding or, as you said, it's a mixed question, a fact in law. In nine years before this lawsuit was filed. A person's domicile can change, and at the time this lawsuit was filed, Judge Morrow's finding really has no effect whatsoever. It's the facts that existed at the time the lawsuit was filed. And those facts point to a lack of diversity jurisdiction. Unless the Court has any other questions, I'll submit on the briefs. Thank you, Your Honor. Thank you. Mr. Yagman, do you have some time for rebuttal? I just have a few points randomly in the order in which they were made by the panel. First, Judge Berzon pointed out that this area of law is fuzzy. And, yes, it is. And it is because there's no controlling case in the Ninth Circuit. The Lew case, on which Judge Olguin based his decision, clearly says that it's not the law of the Ninth Circuit. It's the law of other circuits. So in this case, What's the law of other circuits? I'm sorry. Lew. Oh, I'm sorry. Lew says that the factors that it sets forth are the law in other circuits. It never adopts that law in this circuit. So, at minimum, this panel has an opportunity to write an opinion in this case that sets the law in this circuit, and then Erwin can cite it in his jurisdiction book. Second, the case wasn't filed in 2014, but in 2015. The most important criterion, or criterion, not criteria, is the intent to remain. I never had an intent to remain in New York, I mean in California. And, in fact, Judge Olguin had before him evidence that I, if I don't get back there while I'm still alive, I own a burial plot there. And I have a testamentary intent to be buried in New York, where my parents are buried. I have both New York and California driver's licenses. The only reason I have a California driver's license is because, as was indicated in the brief, I was forced to get one. Well, in fact, you would be required by California law to have one. Only if you're here for more than 30 days. Well, you're certainly here more than 30 days. Sometimes, yes. But I didn't want a California driver's license. I know, but you legally had to have one. I had to get one because the federal government had ordered it. You had to get one because California law requires you to have one. I was breaking the law for, until 2010, I was breaking the law for 25 years by never having a California license. My spouse has a residence in California and in Florida, and I have personal property in all three states, California, New York, and Florida. But you say you don't have a residence in New York. I don't. Do you have personal property there? Yes. Yes, I have personal property that's housed on the real property that I own, which I intend to develop. And I've owned that property since 1991. That's about it, unless there are any questions. No, thank you. Thank you. Okay. Matter submitted. Thank you, Counsel. The matter is submitted at this time.
judges: Paez, Berzon, Christen